UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ELMO DALBERT,                        )  NO. CV-05-0231-CI
                                     )
          Plaintiff,                 )  ORDER GRANTING PLAINTIFF'S
                                     )  MOTION TO SUBSTITUTE PARTY
v.                                   )  AND MOTION FOR SUMMARY
                                     )  JUDGMENT
MIKE LEAVITT, Secretary of Health    )
and Human Services of the United     )
States,                              )
                                     )
          Defendant.                 )

        BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.
Rec 20, 26) and Plaintiff's Motion to Substitute Party (Ct. Rec.
33).   Plaintiff Elmo Dalbert, now deceased, is represented by
attorney Terry Sawyer, Legal Intern Alex Newhouse and the Center for
Justice.   Defendant is represented by Assistant United States
Attorney Pamela J. DeRusha and Special Assistant United States
Attorney Joanne Dantonio.

        This is an appeal of the Secretary of Health and Human
Services' denial of Medicare reimbursement for non-emergency
ambulance services which occurred on December 4, 8, 11 and 13, 2001.
The total amount in controversy is $2,298.00.   The parties have
consented to proceed before a magistrate judge.   (Ct. Rec. 9.)

        Plaintiff Elmo Dalbert's motion for summary judgment was filed

on March 13, 2006. (Ct. Rec. 20). At the time the non-emergency ambulance services were provided, Plaintiff was 86 years old and had a history of renal failure. He required kidney dialysis three times per week. In December 2001, Mr. Dalbert suffered a broken hip and had surgical repair with an intra medullary rod. (Tr. 00072.) Immediately after the surgery, Plaintiff's treating physician, Curtis Wickre, M.D., FACP (Nephrology), requested that Plaintiff be transported to his dialysis treatment by ambulance. (Tr.00081.) Some of the trips were paid for by Medicare, some were denied. In some cases, the ambulance trip to the treatment was paid for and the return trip was denied. When Medicare refused to pay the costs billed to him by the ambulance company, Mr. Dalbert paid them and submitted requests for reimbursement. Mr. Dalbert claims all should have been covered by Medicare as medical necessities. (Ct. Rec. 21 at 19.) After exhausting his remedies at the administrative level, Mr. Dalbert requested review by an administrative law judge (ALJ). The ALJ upheld the agency's denial and the Appeals Council denied review. This appeal followed. Mr. Dalbert died on May 29, 2006.

A Motion for Substitution of Party by Plaintiff's granddaughter Francell Daubert, who was appointed the legal representative of the Estate of Mr. Dalbert by order of the Spokane County Superior Court on June 6, 2006, was filed June 30, 2006. (Ct. Rec. 33, 34.) Ms. Daubert has complied with Rule 25 of the FEDERAL RULES OF CIVIL PROCEDURE regarding substitution of party.

The government filed its Motion for Summary Judgment on May 22, 2006, asserting that substantial evidence supports the ALJ's decision. (Ct. Rec. 26.)

**DISCUSSION**

The regulations governing Medicare coverage provide that non-emergency transportation by ambulance is appropriate if the beneficiary is bed-confined or it is documented that the beneficiary's condition is such that other methods of transportation is contraindicated.  Scheduled, repetitive non-emergency ambulance services are covered if the ambulance provider obtains a written order or certification from the beneficiary's attending physician stating that the medical necessity requirements are met. 42 C.F.R. § 410.40(d)(1)(2).

The ALJ found "[i]t is essentially undisputed that the record contains documentation certifying the beneficiary's eligibility for coverage of ambulance transport."  The record contains Plaintiff's treating Physician's Certification that Plaintiff needed medical supervision during his trips for dialysis.  However, in upholding the denial of coverage, the ALJ found "the medical evidence of record establishes that the beneficiary was medically able to take alternative transportation; that is, that the beneficiary's condition was not such that transportation other than by ambulance was contraindicated."  (Tr. 00029-30.)

In discounting the Physician's Certificate that ambulance transport to treatment was a medical necessity during the time Plaintiff's hip was healing, the ALJ found the nurses' notations that Plaintiff was on two occasions able to get from his bed to the wheelchair was more credible the Plaintiff's treating doctor's statements, which she found "were prepared for the purpose of establishing eligibility for Medicare coverage of services."  She

ORDER GRANTING PLAINTIFF'S MOTION TO SUBSTITUTE PARTY
AND MOTION FOR SUMMARY JUDGMENT - 3

1  also found, "[t]he nurses' progress notes are a more reliable
2  indication of the beneficiary's medical condition." (Tr. 00029.)
3  There is no basis for these findings.  The Physician's Certificate
4  required for non-emergency medical transport stated Plaintiff is "on
5  hip precautions and cannot sit <u>safely;</u> cannot support [himself]
6  <u>safely</u> while seated in wheelchair; and <u>requires medical supervision</u>
7  during transport."   The treating physician explained Plaintiff's
8  surgery was very painful with leg movements and he was "non-
9  ambulatory." (Tr. 00081, 86, 90, 108.) (Emphasis added.)  The fact
10  attending nurses, who arguably observed the Plaintiff on three
11  isolated occasions, noted that Plaintiff was not experiencing pain,
12  could sit up independently in bed and use a wheelchair in the
13  supervised environment of a hospital does not contradict a treating
14  physician's opinion that an 86-year-old dialysis dependent patient
15  cannot sit or support himself "safely" and requires medical
16  supervision during transport to dialysis treatment following hip
17  surgery.  On December 8, 2001, the attending nurse noted that after
18  finding Plaintiff had transferred himself from the wheelchair to the
19  bed, Plaintiff was encouraged to wait for "independent transfers and
20  ambulation" until he was released by his physical therapist. (Tr.
21  00075.)  This evidence indicates the nurses were not convinced that
22  Plaintiff could safely support himself.

23       Further, a nurse is not an acceptable medical source, and while
24  other source opinions are considered by an ALJ, they are not given
25  more weight than a medical source's opinion.   20 C.F.R. §§
26  404.1513(d), 416.913(d).  Here, the medical source who completed the
27  Physician's Certificate was Plaintiff's treating physician or his
28

representative.    Dr. Wickre  is  an  acceptable  medical  source,
specializing in nephrology.   The opinions of a treating source are
given considerable weight that can be rejected only with "clear and
convincing" reasons.   Even if contradicted, specific and legitimate
reasons  must  be  given  for  discounting  a  treating  physician's
opinion.  *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996).  Here,
the treating doctor's opinion was contradicted by nurses who saw the
Plaintiff on and off during his convalescence.   Their notes were
made for the purpose of documenting Plaintiff's condition while he
was in the hospital, not as an opinion of his ability to transport
himself safely to and from the nursing home.   The ALJ erred by
failing  to  give  "clear  and  convincing"  reasons  for  rejecting  the
treating physician's opinions.   He also erred when he gave other
source opinions more weight the treating physician opinion.

     Plaintiff also argues the agency's denial of payment was
arbitrary and capricious.  (Ct. Rec. 21 at 16.)  Under the arbitrary
and capricious standard of review for agency decisions, the court
determines  if  the  agency  "considered  the  relevant  factors  and
articulated a rational connection between the facts found and the
choice made."  *See e.g., Baltimore Gas and Elec. Co. v. Natural
Resources Defense Council*, 462 U.S. 87, 105 (1983).  The government
concedes that in some cases, ambulance costs for return trips were
not reimbursed, while the trip to the hospital was covered.   The
government states,

> While it is difficult to discern the reasons why Medicare
> chose to approve coverage for some ambulance services
> while denying coverage for the services at issue here, the
> approved ambulance services were not at issue before the
> ALJ.   The ALJ's role was simply to apply the law to the
> denied coverage requests before her, and the record

1  reveals that the ALJ did so properly, . . . .

2  (Ct. Rec. 27 at 6.)  This argument is unconvincing and does not

3  articulate a rational connection between the facts and the decision

4  to pay for transport one way, and deny payment for transport the

5  other way on the same day, where there is no evidence of any change

6  in Plaintiff's condition during the two-three hour interim.

7  **CONCLUSION**

8      Upon review of the record in its entirety, including testimony

9  of the deceased Plaintiff, the court finds the agency's decision to

10 deny payment and reimbursement for non-emergency ambulance service

11 was arbitrary and capricious, and the ALJ erred in upholding the

12 agency's decision.  There is not substantial evidence to support the

13 ALJ's findings that the services were not "medically necessary" and,

14 therefore, not "covered" services under the applicable regulations.

15 Accordingly,

16     **IT IS ORDERED:**

17     1.   Plaintiff's Motion for Summary Judgment (Ct. Rec. 20) is

18 **GRANTED**.

19     2.   Defendant's Motion for Summary Judgment (Ct. Rec. 26) is

20 **DENIED.**

21     3.   Plaintiff's Motion to Substitute Party (Ct. Rec. 33) is

22 **GRANTED,** and Francell Daubert, deceased Plaintiff's legal

23 representative, is substituted as the party in interest.

24     4.   The Defendant shall reimburse Plaintiff's estate, by and

25 through Francell Daubert, $2,298.31 for ambulance transportation

26 costs.

27     The District Court Executive is directed to enter this Order,

28

ORDER GRANTING PLAINTIFF'S MOTION TO SUBSTITUTE PARTY
AND MOTION FOR SUMMARY JUDGMENT - 6

1  enter judgment for the Plaintiff, and forward copies to counsel, and

2  thereafter shall close this file.

3       DATED August 15, 2006.

4

5                        S/ CYNTHIA IMBROGNO
                    UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION TO SUBSTITUTE PARTY
AND MOTION FOR SUMMARY JUDGMENT - 7